# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 2971 | **DATE** | 7/31/2003 |
| **CASE TITLE** | FACILITEC CORP. et al vs. GREASE STOPPER INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] ENTER MEMORANDUM OPINION AND ORDER: The Court grants plaintiffs' motion for summary judgment[60-1], denies defendant's counterclaim for a declaratory judgment as moot, and orders a permanent injunction against Grease Stopper that prohibits it and its representatives, assignees or successors, or any subsidiaries, divisions, agents, servants, employees thereof, and/or those in privity with Grease Stopper from acts which constitute direct, induced or contributory infringement during the terms of the '040 and '607 patents. This case is hereby terminated.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | | AUG - 6 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | 15 | |
| ✓ | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | docketing deputy initials | 66 |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | 03 AUG -6 AM 9:47 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
AUG - 6 2003

FACILITEC CORP., and )
ECOLAB, INC., )
 )
    Plaintiffs, )
 )
v. ) Judge Ronald A. Guzmán
 )
GREASE STOPPER, INC., ) 01 C 2971
 )
    Defendant. )

# MEMORANDUM OPINION AND ORDER

Plaintiffs Facilitec Corp. ("Facilitec") and Ecolab Inc. ("Ecolab") have sued defendant Grease Stopper for infringement of U.S. Patent Numbers 5,196,040 ("'040 patent") and 5,318,607 ("'607 patent"), which they own by assignment. Plaintiffs have moved for summary judgment pursuant to Fed. R. Civ. P. ("Rule") 56. For the reasons provided in this Memorandum Opinion and Order, the Court grants plaintiffs' motion for summary judgment and denies Grease Stopper's counterclaim for declaratory judgment.

# FACTS

On April 25, 2001, plaintiffs filed the purported complaint alleging infringement of the '040 patent. Grease Stopper filed an answer, an affirmative defense of non-infringement and a purported counterclaim requesting declaratory judgment of invalidity and non-infringement of the '040 patent. Plaintiffs amended the complaint to allege that

1



Grease Stopper's product also infringes plaintiffs '607 patent. Grease Stopper never answered the amended complaint. On November 26, 2002, plaintiffs filed a motion for summary judgment. Grease Stopper never filed a response.

Before discussing the facts of this case, it is necessary to note the particular importance that Local Rule ("LR 56.1") plays in summary judgment motions filed in the Northern District of Illinois. LR 56.1(b) requires the party in opposition to a summary judgment motion to include a supporting memorandum of law and a statement of material facts that require the denial of summary judgment. LR 56.1(b)(2)-(3). Furthermore, "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." LR 56.1(b)(3)(B). The Court of Appeals for the Seventh Circuit has held that a district court may strictly enforce LR 56.1 because of the importance of the rule. *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 527 (7th Cir. 2000). Here, because Grease Stopper never filed a response to plaintiffs' motion, plaintiffs' facts are deemed admitted.

The '040 patent, entitled "Grease Trap and Filter Apparatus," describes a "grease filter and collection assembly for roof ventilators," which includes a frame structure, where through the vent projects, and a layered composite of grease trapping and filtering materials. (Pl.'s LR 56.1(a)(3) ¶ 9.) The purpose of the invention is to protect roofing material from the harmful effects of grease that escape from ventilator fans. ('040 patent, at col. 1, lines 10-15.)

The '607 patent, also entitled "Grease Trap and Filter Apparatus," is a division of the application that became the '040 patent. (Pl.'s LR 56.1(a)(3) ¶ 21.) Therefore, the

2

'040 and the '607 patents contain disclosures that are nearly identical. (*Id.*) The '607 patent describes only the filter composite and does not require the frame structure that is described in the '040 patent. (*Id.* at ¶ 22.) The '607 patent claims two additional layers of filtering material than does the '040 patent. (*Id.* at ¶ 23.) The purpose of the '607 patent is similar to that of the '040 patent. ('607 patent, at col. 1, lines 14-30.)

Grease Stopper sells two embodiments that plaintiffs allege infringe the '040 and the '607 patents. (Pl.'s LR 56.1(a)(3) ¶ 24.) The first is an octagonal-shaped unit that surrounds the vent and is filled with a layered filtering composite. (*Id.*) The layered filtering composite traps grease that is discharged from the rooftop ventilator. (*Id.*)

The second alleged infringing embodiment is the filtering composites used to retrofit units of Grease Stopper's competitors, such as the unit Facilitec sells. (*Id.* at ¶ 25.) About 45% of Grease Stopper invoices are made up "sales of retrofit filters that are placed in Facilitec's product." (*Id.*)

## DISCUSSION

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (internal quotation omitted). Pursuant to Rule 56(c), the court may grant summary judgment if the pleadings, answers, interrogatories, affidavits, and other materials demonstrate that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

3

of law." FED. R. CIV. P. 56(c). Rule 56(c) mandates the granting of summary judgment against the non-moving party who fails to make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 322. Thus, there is a "substantial burden" on the non-moving party to make known those material facts that are in dispute. *Advanced Cardiovascular Sys. Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1164 (Fed. Cir. 1993). Furthermore, a district court need not scour the record in search of material facts in dispute when the non-movant fails to make such a showing. *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989).

Plaintiffs bear the burden of proving infringement of a patent by a preponderance of the evidence. *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1238 (Fed. Cir. 1989). In order for something to infringe on a patent, the patent must be valid. *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1088 (Fed. Cir. 1998). A patent is presumed to be valid. *Uniroyal Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1051 (Fed. Cir. 1988). The presumption of validity exists at every stage of the litigation. *Canon*, 134 F.3d at 1088. As such, it is the burden of the one claiming invalidity to rebut the presumption by submitting clear and convincing evidence. *Uniroyal*, 837 F.2d at 1051. Thus, if one fails to meet this burden, then the very existence of the patent alone is enough to satisfy the owner's burden on the issue of validity. *Canon*, 134 F.3d at 1088.

Grease Stopper did not reply to plaintiffs' motion for summary judgment and therefore, failed to submit any clear and convincing evidence to rebut the presumption of validity of the '040 and '607 patents. As such, the Court, for the purposes of this motion, deems the '040 and '607 patents as valid.

After a showing of validity, the party claiming infringement must show that the patent is either literally infringed upon or, when that cannot be shown, that the patent is infringed under the doctrine of equivalents. *Uniroyal*, 837 F.2d at 1054, 1057. Literal infringement requires that "every limitation of the patent claim must be found in the accused device." *Id.* at 1054. To make this finding, the scope of the claim must be determined and after that, one must determine if the accused structure is encompassed in the scope of the claim as construed. *Id.*

The question as to whether the claim as construed encompasses the accused device is a factual determination. *Id.* The construction of the claim is a question of law to be determined by the court. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977-78 (Fed. Cir. 1995). Claim construction is "a way of elaborating the normally terse claim language[] in order to understand and explain, but not to change, the scope of the claims." *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1580 (Fed. Cir. 1991). Terms within the claims are presumed by the court to mean what they say and are given their ordinary and accustomed meaning within the trade. *Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999).

Again, because Grease Stopper failed to respond to the motion for summary judgment, the parties do not disagree as to the meaning of the claims. Therefore, because there is no disagreement as to what the claims mean, they are construed based on the plain language of the claims.

Plaintiffs claim that a Grease Stopper embodiment infringes on the '040 patent. In making this allegation, they provided a phrase-by-phrase analysis of the patented

5

invention and how the Grease Stopper device is encompassed by the '040 patent's claim. Their analysis is included below:

| Claim Language – '040 Patent | Accused Device |
|---|---|
| 1. A grease-trapping and filter assembly for roof ventilators, comprising: | The Grease Stopper device is a grease-trapping and filter assembly for use on roof ventilators. |
| a) a frame structure having an aperture through which a grease discharge vent can project surrounded by said frame structure and trap assembly; and | The Grease Stopper device includes a frame structure that has an aperture to allow a grease discharge vent to project through the frame and filter assembly. Ex. 4, Mr. McCrary testified that when the device is fully assembled it "encloses" the vent. *Id.* p. 71 lns. 2-19. He further testified that when it is fully assembled it allows the vent to pass through the middle of the assembly. *Id.* p. 72 lns. 10-13. *See also* Bain Decl. ¶ 32 (explaining that the accused device has a frame structure with an opening that surrounds the vent and creates an opening for the vent to pass through). |
| b) a replaceable, grease-trapping material removably securable in said frame structure and exposed within said aperture | The Grease Stopper device has a replaceable grease-trapping material that is removably securable in the frame structure. Mr. McCrary stated that the frame and filter media "work together," and the frame is bent down "to push the filter media, the red spongy filter media up underneath" the frame. Ex. 4, p. 29 lns. 7-11. In addition, the grease-trapping material of the accused device is exposed within the aperture of the frame assembly so that when the grease is expelled from the vent, it will land on the filtering media. *See,* Ex. 5. *See also* Bain Decl. ¶¶ 33-34. |

| | |
|---|---|
| and having a passageway aligned with said aperture for passage of said vent therethrough, for trapping grease discharged from said vent surrounded by said grease-trapping material | The grease-trapping material in the Grease Stopper device has a passageway aligned with the aperture to allow a vent to pass through, and the grease-trapping material surrounds the vent. Mr. McCrary testified that when the accused device is fully assembled, there is an opening in the unit to allow the vent to pass through. Ex. 4, p. 71 lns. 2-9; p. 72 lns. 10-13. He further testified that the accused device is placed on all four sides of the vent "[t]o enclose the entire area that possibly could be effected." *Id.* at p. 71 lns. 15-19. *See also* Bain Decl. ¶ 35. |
| which comprises an upper, porous layer for trapping particulate debris and being permeable for passage of liquid grease therethrough, | The grease-trapping material in the Grease Stopper device includes an upper, porous layer for trapping particulate debris and is permeable for passage of liquid grease. Mr. McCrary agreed that the top layer "disperses grease . . . traps some there . . . sends it down to th[e] second center layer." Ex. 4, p. 35 lns. 4-8. Mr. McCrary testified that the top layer traps particulate debris and also allows the grease to pass through the top layer into the center absorbent layer. *Id.* p. 60 ln. 22 - p. 61 ln. 4; p. 81 lns. 17-23. *See also* Bain Decl. ¶ 36. |
| and a first lower layer for absorbing grease passing through said upper layer. | The grease-trapping material in the Grease Stopper device includes a lower layer for absorbing grease that passes through the upper layer. Mr. McCrary testified that the Grease Stopper device includes an "absorbent layer" which is "designed to trap and hold grease for a period of time." Ex. 4, p. 33 lns. 4-14. *See also* Bain Decl. ¶ 37. |

(Pl.'s Mem. Supp. Mot. Sum. J., at 13-15.)

Plaintiffs claim that a Grease Stopper embodiment infringes on the '607 patent. In making this allegation, they provided a phrase-by-phrase analysis of the patented invention and how the Grease Stopper device is encompassed by the '607 patent's claim. Their analysis is included below:

7

| Claim Language – '607 Patent | Accused Device |
|---|---|
| 1. A layered composite of grease filtering and trapping materials, comprising: | Both the Grease Stopper device and the "retrofit" filters sold by the defendant are layered composites of grease trapping materials. |
| an upper, porous layer for trapping particulate debris and being permeable for passage of liquid grease therethrough; | The grease-trapping material in the Grease Stopper device and the "retrofit" filters include an upper, porous layer for trapping particulate debris and are permeable for passage of liquid grease. Mr. McCrary agreed that the top layer "disperses grease . . . traps some there . . . sends it down to th[e] second center layer." Ex. 4, p. 35 lns. 4-8.<br><br>Mr. McCrary testified that the top layer traps particulate debris and also allows the grease to pass through the top layer into the center absorbent layer. *Id.*, p. 60 ln. 22 - p. 61 ln. 4; p. 81 lns. 17-23. *See also* Bain Decl. ¶¶ 36, 48. |
| a lower layer for absorbing grease passing through said upper layer, | The grease-trapping material in the Grease Stopper device and the "retrofit" filters include a lower layer for absorbing grease that passes through the upper layer. Mr. McCrary testified that the Grease Stopper device includes an "absorbent layer" which is "designed to trap and hold grease for a period of time." Ex. 4, p. 33 lns. 4-14. *See also* Bain Decl. ¶¶ 37, 49. |
| said composite having a through aperture for enabling passage of a grease discharge vent therethrough in order to trap the discharged grease within said composite; | The grease-trapping material in the Grease Stopper device and the "retrofit" filters allows passage of a grease discharge vent. Mr. McCrary testified that when the accused device is fully assembled, there is an opening in the unit to allow the vent to pass through. Ex. 4, p. 71 lns. 2-9; p. 72 lns. 10-13. He further testified that the accused device is placed on all four sides of the vent "[t]o enclose the entire area that possibly could be effected." *Id.* at p. 71 lns. 15-19. |

| | |
|---|---|
| a barrier layer disposed below said lower layer and impermeable to passage of water or grease therethrough; and | The filter composite sold by Grease Stopper contains the claimed barrier layer. Mr. McCrary testified that the filter composition includes "a barrier layer that allows the grease to be trapped and not permeate through the bottom layer." Ex. 4, p. 59 lns. 7-11. *See also* Bain Decl. ¶ 50. |
| a bottom layer below said barrier layer for spacing said upper and lower layers from standing water and promoting air circulation thereunder | The filter composite sold by Grease Stopper has a bottom layer to space the upper and lower layers from standing water and to promote air circulation. Grease Stopper's website, and the testimony of Mr. McCrary establish that the accused filter composite contains the claimed bottom layer. Specifically, the accused filters contain a "polymer mat" that allows "allows air flow while assisting with water discharge." Ex.8; Ex. 4, p. 89 lns. 5-9. Mr. McCrary explained that "the lower layer allows the water that might get in a particular section of the unit . . . to get where it needs to be to get out of the filtering system itself." *Id.* p. 89 lns. 10-20. *See also* Bain Decl. ¶ 51. |

(Pl.'s Mem. Supp. Mot. Sum. J., at 16-17.)

Grease Stopper failed to make any response rebutting the analysis that plaintiffs provided to the Court. The Court is neither expected nor required to scour the record for material facts in dispute. *Herman*, 870 F.2d at 404. However, the Court did review those portions of the record cited by plaintiffs. After doing so, the Court finds that the factual statements are supported by the record. Those facts support plaintiffs' allegations of infringement of the'040 and '607 patents because every limitation of the patent claim is found in the accused device and is supported by the record. Thus, the Court concludes that plaintiffs have met their burden of showing that the Grease Stopper embodiments infringe upon the '040 the '607 patents by a preponderance of the evidence. Thus,

9

because there are no material facts in dispute and plaintiffs have met their burden, the Court grants plaintiffs' motion for summary judgment.

Next, the Court considers what relief should be given to plaintiffs. When a party moves for summary judgment, unless otherwise stated as a motion for *partial* summary judgment, the party moves for summary judgment on all claims. *Spitz v. Tepfer*, 171 F.3d 443, 447-48 (7th Cir. 1999). Thus, when a party requests a certain remedy in the complaint but fails to mention that remedy in its motion for summary judgment, that remedy is deemed to have been abandoned. *Id.*

Here, plaintiffs requested more remedies than just a permanent injunction in the amended complaint. (Pl.'s First Am. Compl. ¶¶ A-G.) However, in the motion for summary judgement only a permanent injunction was requested. Thus, the other remedies requested in the first amended complaint are deemed abandoned. As such, only the permanent junction shall be considered.

When there is a clear showing of a valid patent and infringement on that patent, the owner is presumed to have been irreparable harmed. *Richardson*, 868 F.2d at 1247. The presumption is due in part to the finite term placed on the patent and the fact that the owner does not receive a temporal extension for the time spent litigating the issue of infringement. *Id.*

> Once infringement is established,
>> it is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from the use of his property. The right to exclude recognized in a patent is but

> the essence of the concept of property. Thus, it is a general rule
> that an injunction will be issued when infringement has been
> adjudge, absent a sound reason for denying it.

*Id.* at 1246-47 (internal citation omitted); *see also Carborundum Co. v. Molten Metal Equip. Innovations, Inc.*, 72 F.3d 872, 878-81 (Fed. Cir. 1995) (holding that patent grants owner right to exclude others from using, selling or making patented invention, and thus, injunctions are usually granted after finding of infringement.)

In determining the scope of the injunctive relief, courts are given broad discretion. *Carborundum*, 72 F.3d at 881. The applicable statute dictates that "[t]he several court having jurisdiction of cases under this title may grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. Thus, the purpose behind the granting of the injunction must be to prevent the violation of the right secured by the owner rather than to be punitive. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 772-73 (Fed. Cir. 1993).

The Court has been provided no reason to deny the order of a permanent injunction. Thus, because infringement has been found, in order to protect plaintiffs' property rights in the '040 and '607 patents, a permanent injunction ought to be ordered. The Court hereby orders a permanent injunction against Grease Stopper, their representatives, assignees or successors, or any subsidiaries, divisions, agents, servants, employees thereof, and/or those in privity with Grease Stopper from acts which constitute direct, induced or contributory infringement during the terms of the '040 patent and the '607 patent including but not limited to the sale of Grease Stopper Grease System, Grease Stopper Unit, Pentagon Defense System, Pentagon Roof Top Defense System, Pentagon

Roof "Tuff Top" Defense System, Tuff Pak System Filter Mats, Tuff Top Containment System, Filter Mats Replacements for Compartmentalized System, Retrofit Replacement TLM, and 8 pak Center Layer Mat.

Finally, the Court briefly addresses Grease Stopper's counterclaim that merely requests a declaratory judgement of invalidity and non-infringement of the '040 patent. (Def.'s Ans., Affirm. Def. & Countercl. at p. 6-7 ¶¶ 2-3.) Because the Court has found the '040 patent valid and infringed by Grease Stopper, defendant's counterclaim is moot.

## CONCLUSION

For the foregoing reasons, the Court grants plaintiffs' motion for summary judgment [doc. no. 60-1], denies defendant's counterclaim for a declaratory judgment as moot, and orders a permanent injunction against Grease Stopper that prohibits it and its representatives, assignees or successors, or any subsidiaries, divisions, agents, servants, employees thereof, and/or those in privity with Grease Stopper from acts which constitute direct, induced or contributory infringement during the terms of the '040 and '607 patents. This case is hereby terminated.

SO ORDERED

ENTERED: 7/31/03

HON. RONALD A. GUZMAN
United States Judge